OPINION OF THE COURT
David B. Saxe, J.
The issue to be determined on this motion to restore the tenant to possession of certain commercial premises is whether after the tenant had stipulated to a final judgment of possession, the issuance of a warrant and a stay of its execution until a date certain, the tenant may thereafter by agreement with the landlord, effect a legal surrender of the premises prior to the expiration of the stay. The determination of whether the earlier date or the later date constitutes a legal surrender of the premises is crucial in deciding whether the tenant is entitled to be restored to possession under the terms of the lease.
The essential facts are as follows: the respondent tenant entered into a 10-year lease dated August 13, 1976 for the premises, the store and basement at 121 East 57th Street, New York, New York.
Despite the fact that the 10-year lease term expires on July 31, 1982, paragraph 43:8 of the lease provides for an earlier termination date on or after August 15, 1976 provided that the landlord gives the tenant at least 90 days’ written notice of such termination and provided that it is in furtherance of the landlord’s plan to demolish, alter or *760 renovate the building. Paragraph 43:8 further states that upon delivery of possession to the landlord in accordance with the terms of the lease, the landlord will pay to the tenant a certain sum of money.
Finally, paragraph 43:8 contains what is popularly termed a “recapture” clause. If, for example, the demolition is not commenced within 90 days after the tenant has surrendered the premises, the tenant has the option, upon complying with certain terms and conditions to re-enter and reoccupy the premises for the unexpired balance of the lease term.
In accordance with paragraph 43:8 of the lease, on June 26, 1981, the landlord served a notice on the tenant which purported to terminate the respondent’s tenancy on September 30, 1981 in view of the landlord’s intention to demolish the premises.
Since the tenant did not vacate the premises on September 30,1981, the petitioner commenced a holdover proceeding. As a result of negotiations, the parties entered into a stipulation of settlement, providing for the entry of a final judgment of possession and the issuance of a warrant, with a stay of its enforcement until January 31, 1982.
On December 21,1981, however, the tenant surrendered possession as part of what appears to be a surrender agreement. The tenant requested certain moneys allegedly due it pursuant to the terms of the lease agreement. On December 22,1981 the sum of $13,416.25 was received and accepted by the tenant who simultaneously turned over the keys to the premises to the landlord.
It is the landlord’s contention that the surrender of the premises occurred not on January 31, 1982 when the stay of enforcement of the warrant expired but on December 21, 1981 when the tenant surrendered the premises.
On May 6, 1982, the tenant’s attorneys wrote to the landlord’s attorneys attempting to exercise the option to reoccupy the premises for the unexpired balance of the term. The landlord, relying on the surrender of December 21,1981, contended that the 10-day option period following the end of the 90-day period, ended on April 5,1982. Since no option was exercised by this date, the landlord’s position *761 is that the purported exercise of the recapture clause by the tenant is void. The tenant contends that (a) the 90-day period did not begin to run until January 31,1982; (b) that 90 days after January 31, 1982 was May 2, 1982; (c) that during that period the landlord did not begin any demolition of the premises; and (d) that on May 6,1982 (within 10 business days of the end of the 90-day period) the tenant’s attorney validly attempted to exercise the option to reoccupy the premises.
By stipulation the parties agreed that the execution of the warrant issued pursuant to a consent judgment of possession was to be January 31, 1982. Although the issuance of a warrant of eviction effectively annuls the relationship of landlord and tenant (RPAPL 749, subd 3), the stay of the warrant’s execution until January 31, 1982 confirmed that it was that date when physical possession was to be delivered up to the landlord. Had nothing more occurred, January 31 would have been the measuring date for the attempted exercise of the recapture clause.
The parties, however, fixed an earlier surrender date — December 21, 1981. This, of course, they were free to do.
A surrender is “the restoring and yielding up of an estate for life or for years to him who has the immediate estate in reversion or remainder, whereby the lesser estate is merged in the reversion or remainder.” (See Rasch, New York Landlord and Tenant [2d ed], § 854.) A surrender of a lease involves and connotes a reconveyance of the term by a tenant to his landlord, who accepts such reconveyance, thereby causing the lease to end before its natural expiration. (Ibid.)
The type of surrender that occurred here was an express surrender by the tenant (id., at § 855) of the remainder of its lease term. “An express surrender is one voluntarily made by the express mutual agreement of the parties to a lease, and expressly manifests an intention to reconvey the leasehold estate to the landlord.” (Ibid.) There must be a mutual agreement between the landlord and tenant that the lease terminate as well. (Ibid.) The December 21 date is one that not only establishes a redelivery of physical possession on the part of the tenant, it is also the date on *762 which the parties agreed that the lease term would terminate.
Although a surrender of possession “is not always a surrender of a ‘lease’ or of the ‘estate’ thereby created” (Kottler v New York Bargain House, 242 NY 28, 35 [Cardozo, J.]), here, the surrender was manifested by an express agreement between the parties. It is clear therefore that the surrender effectively occurred on December 21, 1981 and that the recapture option should have taken place by April 5, 1982. It was not.
The tenant appears to also contend that if the landlord had not begun demolition within 90 days from the date of the tenant’s surrender, the landlord is not in a position to complain if the respondent is restored to possession even if the exercise of the option is not done in a timely manner. The tenant’s position is incorrect. The lease provides (par 43:8) that if the demolition is not commenced within 90 days after surrender of the demised premises, the tenant, upon 10 days’ notice, shall have the option to reoccupy the premises. The tenant failed to exercise its rights within the specified time. That no demolition may have taken place at all is immaterial. The lease provision is clear and unambiguous and must be enforced according to its terms. (Martin v Glenzan Assoc., 75 AD2d 660.) I, therefore, reject this argument.
Finally, I am urged that the respondent should be relieved from this forfeiture of its valuable property right, viz., its right to recapture the premises for the unexpired term of the lease. In particular, the tenant relies on the Court of Appeals decision in Sy Jack Realty Co. v Pergament Syosset Corp. (27 NY2d 449). In that case, a letter mailed by the tenant stating that it wishes to exercise an option to renew the lease was never delivered. However, the court held that since the landlord had actually received notice before it attempted to find another tenant or lease space, the tenant should be relieved of its default. The court noted that the failure by the tenant to give timely notice did not harm or prejudice the landlord and was not due to bad faith.
The tenant here, a restaurant specializing in “diet food and the sale of ice cream,” claims that it would be severely *763 prejudiced by being deprived of a right to recapture since the summer months are of vital importance to its business. On the landlord’s side, it is contended that the eviction is the last part of a series of acts designed to assemble a plot of land on East 57th Street in Manhattan and to construct a new building after demolition of existing buildings have taken place. All residential tenants have been removed from the site and it appears that the landlord is prepared to proceed with demolition. It is contended that severe prejudice would result to the landlord if it was not allowed to proceed with its plans.
I hold that here, unlike the Sy Jack case, the landlord has effectively established the possibility of prejudice to itself from a decision favoring the tenant’s right to recapture. Although forfeiture of valuable property rights are not enforced by courts (Harar Realty Corp. v Michlin & Hill, 86 AD2d 182), and should be stricken down (supra), where, as here, the tenant’s rights to continued possession in the event of demolition plans for the premises were carefully articulated in a lease, there is no reason to disturb the consequences of the applicable lease provision. And where a surrender agreement negotiated by experienced counsel establishes a cutoff point from which a time period contained in the lease inexorably flows, the surrender agreement and the lease should be honored and not tampered with. (33 NY Jur, Landlord and Tenant, § 78.)
If in fact demolition had not taken place during the time period fixed in the lease, the tenant had rights available to it. It should not benefit from its delay where now, on balance, the prejudice to the tenant resulting from a denial of its application to recapture would be no greater than the prejudice to the landlord resulting from a delay in its plans of demolition.
Motion denied.